UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RONALD J. BAUDY, SR., ET AL. | CIVIL ACTION |
| VERSUS | NO. 19-13345 |
| TRISH ADAME, ET AL. | SECTION "A" (4) |

## ORDER AND REASONS

Before the Court are three separate motions. First, a **Motion to Dismiss (Rec. Doc. 8)** pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) filed by the Defendant Nationwide Life and Annuity Insurance Company ("Nationwide"). Second, a **Motion to Dismiss (Rec. Doc. 10)** pursuant to FRCP 12(b)(6) and (7) filed by the Defendants Trish Adame and Federal Employees First Alliance ("FEFA"). Third, a **Motion for Leave to File First Amended Complaint (Rec. Doc. 22)** filed by the Plaintiffs. These three motions are all opposed. Further, the two motions to dismiss were submitted for consideration on February 5, 2020. The motion for leave to amend the Plaintiffs' complaint was submitted for consideration on March 4, 2020. All three of these motions are before the Court on the briefs without oral argument.

**I.  Background**

The Plaintiffs are all either employees or former employees of the United States Postal Service and are all between the ages of 60 and 78. (Rec. Doc. 22-2, p. 3, Plaintiffs' Amended Complaint). In 2018, each Plaintiff bought an annuity contract from Adame, an insurance agent for the Defendants. *Id*. However, "[d]espite [the] Plaintiffs' differing age ranges and retirement needs, all of the Plaintiffs were sold identical or nearly identical Contracts[.]" *Id*. at 4. Once the agreements were finalized, Nationwide mailed each Plaintiff a copy of his or her

contract and then required the Plaintiffs to mail back a signed statement acknowledging that he or she received the contracts. (Rec. Doc. 24-2, p. 3, Adame and FEFA Reply). The Plaintiffs' signed these acknowledgements on the following dates:

> Ronald J Baudy, Sr – May 5, 2018
> Elvin Green – May 7, 2018
> Iris Matthews – March 22, 2018
> Edward Henderson – August 30, 2018[1]

A year later, during the summer of 2019, the Plaintiff Baudy met with his independent financial advisor because he wanted to make a withdrawal from his annuity. (Rec. Doc. 22-2, p. 5, Plaintiffs' Proposed Amended Complaint). However, his advisor discouraged him from doing this because of the annuity's unfavorable terms. *Id*. This is when Baudy learned of three significant problems with the terms of the annuity contracts the Plaintiffs had purchased. First, "the Contingent Deferred Sales Charge extends for nearly ten (10) years, meaning that [the] Plaintiffs could not withdraw the entirety of the funds for nearly ten years without a huge penalty." *Id*. at 6. Second, if the Plaintiffs needed to withdraw the annuity funds to pay for a medical emergency, "it could cost them up to ten (10%) percent of their total investment." *Id*. Third, if a Plaintiff chose to withdraw his or her money, that withdrawal came directly from the principal. *Id*. at 7. The accrued interest could only be withdrawn once every three years. *Id*.

After Baudy informed the other Plaintiffs of the true nature of their annuities, they subsequently filed this suit in Louisiana state court on October 3, 2019. (Rec. Doc. 1-1, Plaintiffs' State Court Petition). They claimed in their Petition that the Defendants, "violated the Louisiana Insurance Code, including applicable standards of care, by not disclosing the

---

[1] (Rec. Doc. 24-2, p. 3, Adame and FEFA Reply); (Rec. Doc. 10-1, p. 4, Adame and FEFA Memorandum in Support).

terms of the insurance product they offered, making material misrepresentations and/or omissions, committing fraud by not disclosing the terms of the product, giving investment advice for retirement when not being licensed to do so, and not acting in the best interest of their customers." (Rec. Doc. 22-2, p. 9, Plaintiffs' Proposed Amended Complaint). As a result, the Plaintiffs sought, "rescission of the Contracts, the return of the full amount placed into the Contracts by [the] Plaintiffs, interest and lost earnings thereon, and attorneys' fees." *Id*.

After the Plaintiffs filed suit, the Defendants removed this action to the Eastern District of Louisiana on October 30, 2019. (Rec. Doc. 1, Notice of Removal). The Defendants then responded to the Plaintiffs' allegations by filing two motions to dismiss pursuant to FRCP 12(b)(6) and (7). (Rec. Doc. 8); (Rec. Doc. 10).

Rather than filing a formal opposition to the Defendants' motions to dismiss, the Plaintiffs instead filed a motion to amend their Complaint in order to "cure any alleged deficiencies that the [Defendants] raised in their Motions to Dismiss." (Rec. Doc. 22-1, p. 1, The Plaintiffs' Proposed Amended Complaint). The Defendants opposed this motion. *Id*.

Accordingly, to address these three motions, the Court will first assess the merits of the Defendants' two motions to dismiss, and then it will analyze the Plaintiffs' motion to amend.

II.  **Legal Standard**

   a. **Standard for FRCP 12(b)(6)**

FRCP 12(b)(6) permits a court to dismiss a complaint when a plaintiff has failed to state a claim for which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 677 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not mere legal conclusions portrayed as facts. *Id*. at 667 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Twombly,* 550 U.S. at 555). Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id*. A complaint states a "plausible claim for relief" when the factual allegations contained therein, taken as true, necessarily demonstrate actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id*.; *see also Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir.1986). Lastly, the Court "will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts[.]" *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### b. Standard for FRCP 12(b)(7)

"Federal Rule of Civil Procedure 12(b)(7) allows dismissal for 'failure to join a party under Rule 19.'" *Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 814 (5th Cir. 2016) (quoting Fed. R. Civ. P.12(b)(7)). "Determining whether to dismiss a case for failure to join an indispensable party requires a two-step inquiry." *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). "Rule 19(a) provides a framework for deciding whether a given person should be joined," and "Rule 19(b) guides the court in deciding whether the suit should be dismissed if that person cannot be joined." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986). "The court must first determine under Rule 19(a) whether a person should be joined to the lawsuit. If joinder is warranted, then the person will be brought into the lawsuit." *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003).

"If the necessary party cannot be joined without destroying subject-matter jurisdiction, the court must then determine whether that person is 'indispensable,' that is, whether litigation can be properly pursued without the absent party." *Hood*, 570 F.3d at 629. "While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after 'an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Hood*, 570 F.3d at 628 (quoting *Pulitzer-Polster*, 784 F.2d at 1309).

### III. Discussion

#### A. Dismissal Pursuant to FRCP 12(b)(6)

##### i. The Plaintiffs' Fraud Claims

Fraud under Louisiana law entails a "misrepresentation or suppression of the truth made with the intention to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. The Fifth Circuit has stated that the requisite elements of a fraud claim are: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir.1997) (citing *Cyrak v. Lemon*, 919 F.2d 320 (5th Cir.1990)). FRCP 9(b) requires that all claims of fraud be pled with particularity, including "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel-Phonic Services, Inc. v. TBS International, Inc.,* 975 F.2d 1134, 1138 (5th Cir. 1992).

For claims of fraud by silence or omission, there must be a duty to speak. *Greene v. Gulf Coast Bank*, 593 So.2d 630 (La.1992). Although there is no general duty to speak under

Louisiana law, that duty may exist in a fiduciary relationship. *Id.* at 632. A fiduciary relationship is one where "confidence is reposed on one side and there is resulting superiority and influence on the other." *Plaquemines Parish Comm'n Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1040 (La.1987). "The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Id.*

Recently, the Louisiana Supreme Court reiterated that state law "'recognizes that the refusal to speak, in the face of an obligation to do so, is not merely unfair, but is fraudulent.'" *Lomont v. Myer–Bennett*, 172 So.3d 620, 629 (La. 2015), quoting *Bunge Corp. v. GATX Corp.*, 557 So.2d 1376, 1383 (La.1990). Further, in Louisiana, "'[a]lthough a party may keep absolute silence and violate no rule of law or equity . . . if he volunteers to speak and to convey information which may influence the conduct of the other party, he is bound to [disclose] the whole truth.'" *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 419 (5th Cir. La.2008) (quoting *American Guaranty Co. v. Sunset Realty & Planting Co.*, 23 So.2d 409, 455-56 (La. 1944). After reviewing Louisiana cases on the issue, the Fifth Circuit has further stated that, "before a duty to disclose is imposed the defendant must have had a pecuniary interest in the transaction." *Id.* at 420, *citing Barrie v. V.P. Exterminators, Inc.*, 625 So.2d 1007, 1017 (La.1993) ("Due to V.P.'s pecuniary interest in supplying the information, the duty arose to exercise reasonable care").

Louisiana courts have "tended to impose a duty [to speak] when the circumstances are such that the failure to disclose would violate a standard requiring conformity to what the ordinary ethical person would have disclosed." *Bunge Corp.*, 557 So.2d at 1384. Whether this duty exists is a legal question, with relevant factors including: "whether the obligation is being

imposed on a seller, who is more likely to be required to disclose; the importance of the fact not disclosed; the relationship of the parties; and the nature of the fact not disclosed." *Id*. However, fraud by omission or silence "'is by its very nature difficult to plead with particularity.' Because it does not involve an affirmative misrepresentation, it often does not occur at a specific place or precise time, or involve specific persons." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F.Supp. 587, 598 (E.D. La. 1993) (J. Clement), quoting *Daher v. G.D. Searle & Co.*, 695 F.Supp. 436, 440 (D. Minn. 1988). At a minimum, a plaintiff alleging fraud by silence must show (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information. *Id.*

Here, the Plaintiffs claim that the Defendants acted fraudulently by failing to adequately explain the full nature of the annuities they purchased. They explain that, "[f]or instance, Baudy was apparently informed that 'he ha[d] full access and control over this plan.'" (Rec. Doc. 22-2, p. 7, The Plaintiffs' Proposed Amended Complaint). Similarly, "Green was told that he could have 'access to up to 7% [of the principal] with no fee.'" *Id*. However, they eventually learned that these statements were untrue. *Id*. 6-8. The Plaintiffs also contend that the Defendants did not have their best interests in mind when selling these annuities. More specifically, "[d]espite [the] Plaintiffs' differing age ranges and retirement needs, all of the Plaintiffs were sold identical or nearly identical Contracts in 2018. *Id*. at 4. "[The] Defendants did no analysis of whether the Contracts were appropriate for the individual Plaintiffs' retirement needs despite previously holding themselves out as experts in retirement for

federal employees." *Id*. Instead, the Plaintiffs note that the Defendants "received a large commission because [they] purchased the Contracts." *Id*. at 8.

Conversely, the Defendants argue that they had no duty to explain something that was clearly set forth and explained in their annuity contracts. (Rec. Doc. 26, p. 3, Nationwide's Reply Memorandum). As the Defendants explained, "[a]n annuity is an insurance contract." *Id*.; *see* La. R.S. 22:47. "An insured is presumed to know the provisions of his policy." (Rec. Doc. 26, p. 3, Nationwide's Reply Memorandum); *Stephens v. Audubon Ins. Co.*, 27,658 (La. App. 2 Cir. 12/6/95). "Louisiana law imposes a duty on an insured to read the insurance policies issued to it and to know the provisions of those policies." (Rec. Doc. 26, p. 3-4, Nationwide's Reply Memorandum); *Healthcare Supply, Inc. v. Assured Partners Gulf Coast Ins. Agency, LLC*, 112 F. Supp. 3d 519, 522 (W.D. La. 2015). "In fact, it is well settled that it is the insured's obligation to read the policy when received, since the insured is deemed to know the policy contents." *Id*. (internal citations omitted). "Accordingly, [the] Plaintiffs' claims based on fraud (including misrepresentation and/or omission claims) against [the Defendants] should be dismissed." (Rec. Doc. 26, p. 4, Nationwide's Reply Memorandum).

After analyzing both parties' arguments, the Court denies the Defendants' motion to dismiss under FRCP 12(b)(6) on this issue. The Court notes that, "[u]nder Louisiana law, an insurance agent has a fiduciary duty to the insured[.]" *Offshore Prod. Contractors, Inc. v. Republic Underwriters Ins. Co.*, 910 F.2d 224, 229 (5th Cir. 1990). Further, while an insurance agent does not have a duty to "spontaneously identify" a client's needs, an agent is still required to "provide coverage for the client's specific concerns." *Id*. at 230. Similarly, if "a client directly informs the broker about a particular risk, reasonable diligence requires the broker to address that specific risk, and to determine which insurance company can provide

the desired coverage." *Id*. at 231. Thus, the Court finds it plausible that the Defendants breached their fiduciary duty and acted fraudulently by failing to fully explain their annuity contracts and by making misrepresentations about the true nature of these annuities. This conclusion is bolstered by the fact that the Defendants do not dispute that they were not fully upfront with the Plaintiffs and instead contend that the Plaintiffs should have been more careful when purchasing these annuities. Moreover, discovery is needed to determine whether the Defendants had knowledge of each Plaintiff's individual investment needs. Only once this discovery is completed will the scope of the Defendants' fiduciary duty be more readily definable. Accordingly, the Court concludes that the Plaintiffs have met their pleading requirements under FRCP 9(b) and FRCP 12(b)(6) on this issue.

    ii.    Claims are Untimely under La. R.S. § 9:5606

The Defendants also argue that the Plaintiffs' claims are untimely under La. R.S. § 9:5606. (Rec. Doc. 24-2, p. 5, Adame and FEFA Reply Memorandum). The relevant provisions of § 9:5606 provide that:

> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> * * *
>
> C. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.[2]

---

[2] "Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code Ann. art. 1953.

Here, as the Court recognized above, the Plaintiffs make a plausible case that the Defendants acted fraudulently. Thus, the issue in this matter is how to interpret § 9:5606(C). Because this issue involves interpreting Louisiana substantive law, the Court is "bound to apply the law as interpreted by the state's highest court." *Barfield v. Madison Cty.*, 212 F.3d 269, 271-72 (5th Cir. 2000). "If the state's highest court has not spoken on the particular issue, 'it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.'" *Id.* at 272 (quoting *Transcontinental Gas v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)). The Louisiana Supreme Court has not addressed whether the peremptive periods set forth in § 9:5606(A) govern a claim for insurance agent malpractice once fraud is established. Accordingly, the Court must make an *Erie*-guess as to how the Louisiana Supreme Court would rule on this issue. *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 199 (5th Cir. 2006) (Where the state's highest court has not spoken, courts must make an "*Erie*-guess" in predicting how that court would rule); *see generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In making this determination, courts are to rely upon the following:

> (1) decisions of the [Louisiana] Supreme Court in analogous cases, (2) the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues, (3) dicta by the [Louisiana] Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which [Louisiana] courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries.[3]

---

[3] *Gulf and Mississippi River Transp. Co., Ltd. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488-89 (5th Cir. 2013) (alterations in original) (quoting *Am. Int's Specialty Lines Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010)).

The Court finds that the insurance agent malpractice statute at issue in this matter, § 9:5606, is virtually identical in substance to the attorney malpractice statute, § 9:5605, which the Louisiana Supreme Court analyzed in *Lomont*. § 9:5605 provides that:

> A. No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> * * *
>
> E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

In *Lomont*, the Louisiana Supreme Court found that, when the fraud exception of § 9:5605(E) applies, "the peremptive periods contained in La. R.S. 9:5605 are not applicable and [a] plaintiff's legal malpractice claim is [instead] governed by the one-year prescriptive period in La. C.C. art. 3492. *Lomont*, 172 So. 3d at 639. Thus, the three-year peremptive period also does not apply. The Court here finds no compelling reason to believe that the "rationales and analyses" underlying the Louisiana Supreme Court's statutory interpretation of § 9:5605 in *Lomont* should not apply with equal force to a claim involving insurance agent malpractice under § 9:5606. *Gulf and Mississippi River Transp. Co., Ltd.*, 730 F.3d at 488-89 (When making an *Erie* guess, courts are to rely upon "decisions of the [Louisiana] Supreme Court in analogous cases, . . . [and] the rationales and analyses underlying [Louisiana] Supreme Court decisions on related issues.") (alterations in original) (quoting *Am. Int's Specialty Lines Co.*,

620 F.3d at 564). Moreover, this interpretation is supported by various Louisiana circuit court opinions. *See e.g., Cerullo v. Heisser*, 213 So.3d 1232, 1236-37 (La. App. 5th Cir. 2017) (citing *Shermohmad v. Ebrahimi*, 945 So.2d 119, 122 (La. App. 5th Cir. 2016)); *Klein v. American Life & Cas. Co.*, 858 So.2d 527, 531 n.4. (La. App. 1st Cir. 2013).

Thus, because all time periods in § 9:5606(A) are peremptive, like in § 9:5605, "the clear wording of [§ 9:5606(C)] mandates that none of the time periods in the statute can be applied to [insurance agent] malpractice claims once fraud has been established." *Lomont*, 172 So. 3d at 636. Accordingly, the Court holds that once fraud has been established in an insurance agent malpractice claim, the one-year prescriptive period set forth in La. Civ. Code art. 3492 governs instead of either the one or three-year peremptive periods set forth in § 9:5606(A).

Applying art. 3492 to this case, the Court finds that each Plaintiff sustained his or her injuries for the purposes of prescription on the day he or she signed the annuity contract.[4] As noted above, the last signed acknowledgment was mailed back by the Plaintiffs to the Defendants on August 30, 2018. The Plaintiffs did not file this suit until October 3, 2019, more than one year after all the Plaintiffs sustained their injuries.[5] (Rec. Doc. 1-1, State Court Petition). Thus, the Plaintiffs' claims have prescribed unless the doctrine of *contra non*

---

[4] "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3492.

[5] The Court notes that the Louisiana Supreme Court has held that the "date of discovery" from which prescription/preemption begins to run is "the date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant." *Jenkins v. Starns*, 85 So.3d 612, 621-22 (La. 2012). Here, each Plaintiff's "date of discovery" is the day he or she signed the document acknowledging that he or she had received the written annuity contract from the Defendants.

*valentem* applies. The Louisiana Supreme Court tolls liberative prescription under the doctrine of *contra non valentem* in four factual situations:

> (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action;
>
> (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting;
>
> (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or
>
> (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant.[6]

Because the Plaintiffs were seemingly unaware of the fraudulent nature of the parties' annuity contracts until Baudy spoke with his independent investment advisor in the summer of 2019, the Court concludes that the third category of *contra non valentem* is applicable in this case. This decision is bolstered by the fact that this third category is partly an application of "the long-established principle of law that one should not be able to take advantage of his own wrongful act." *See Nathan v. Carter*, 372 So.2d 560, 562 (La. 1979); *see also Corsey v. State, through Dept. Of Corrections*, 375 So.2d 1319, 1324 (La. 1979); *Hyman v. Hibernia Bank & Trust Co.*, 71 So. 598, 600 (La. 1916). Accordingly, because prescription in this matter was tolled until the summer of 2019, the Court concludes that the Plaintiffs timely filed their claim within the prescriptive period.

### iii. Return of the Purchase Price, Interest, and Attorney's Fees

In their motion to dismiss, the Defendants also contend that the Plaintiffs' claim for rescission, damages, and attorneys' fees should be dismissed.

Fraud vitiates consent, and vitiated consent is grounds for rescission. La. C.C.P. art. 1948; *see* La. C.C. art. 2031 ("A contract is relatively null when it violates a rule intended for

---

[6] *Fontenot v. ABC Ins. Co.*, 674 So.2d 960, 963 (La. 1996).

the protection of private parties, as when a party lacked capacity or did not give free consent at the time the contract was made."). Further, La. C.C. art. 1958 provides that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees." Thus, the Court finds that if the Plaintiffs can prove fraud in this case, they will be entitled to return of the price, damages, and attorney's fees. Accordingly, the Defendants' motion to dismiss as to this issue is denied.

      iv.     The Plaintiffs' Claims Based on the Louisiana Insurance Code

The Defendants next argue that, because the Louisiana Insurance Code does not confer a private right of action, the Plaintiffs' claims under this Code should be dismissed.

Part IV of Chapter 7 of the Louisiana Insurance Code (Title 22) regulates Unfair Trade Practices in the insurance industry. La. Rev. Stat. § 22:1961, *et seq*. Under § 22:1963, it is unlawful for a person to engage in any trade practice that is defined by Part IV to be "an unfair method of competition or an unfair or deceptive act or practice in the conduct of the business of insurance." *Id*. at § 22:1963. However, under § 22:1967, only the Louisiana Commissioner of Insurance is empowered to enforce Part IV. Accordingly, Louisiana courts have held that, "no provision of this statutory scheme . . . creates a cause of action in favor of a person allegedly injured by unfair trade practices in the insurance business." *Klein v. Am. Life & Cas. Co.*, 858 So.2d 527, 533 (La. Ct. App. 2003); *see also Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 190-93 (La. 1997)

Although the Plaintiffs claim in their proposed Amended Complaint that the Defendants "violated the Louisiana Insurance Code," (Rec. Doc. 22-2, p. 9, Proposed Amended Complaint), they clarified this statement in their Memorandum in Support by saying: "[i]t is true that only the Louisiana Insurance Commissioner can bring claims in direct violation

of the Louisiana Insurance Code." (Rec. Doc. 22-1, p. 2, Motion to Amend). "The Code, however, sets the standard of care by which individuals, like the Defendants here, can be held liable, i.e., fraud, negligence, and breach of contract, among others." *Id*. "[That is] just one provision of the Code that was violated and forms a basis for relief under multiple theories." *Id*. Thus, although the Defendants contend otherwise, the Court finds that the Plaintiffs are not asserting a cause of action under the Louisiana Insurance Code.

**B. Dismissal Pursuant to FRCP 12(b)(7)**

"Federal Rule of Civil Procedure 12(b)(7) allows dismissal for 'failure to join a party under Rule 19.'" *Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 814 (5th Cir. 2016) (quoting Fed. R. Civ. P.12(b)(7)). Here, the Defendants claim that the Plaintiffs failed to join an indispensable party, EV Federal, LLC. (Rec. Doc. 10-1, p. 7, Adame and FEFA Memorandum in Support). However, the Plaintiffs now seek to name EV Federal as an additional Defendant in their proposed Amended Complaint. (Rec. Doc. 22-2, p. 2, The Plaintiffs' Proposed Amended Complaint). Thus, if the Court grants the Plaintiffs' motion to amend, this issue becomes moot.

**C. Plaintiffs' Motion for Leave to Amend Their Complaint**

The Court can grant a plaintiff's leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts have discretion to grant leave to amend, and the federal rules favor granting leave over denying it. *See Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). Justifications for denying leave to amend include "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment." *Id*. Allowing a plaintiff to amend a Complaint is "futile" when "the amended Complaint would fail to state a

claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 873 (5th Cir. 2000). Here, there is no indication that allowing the Plaintiffs to amend their Complaint would be futile. As noted above, the Court recognizes that the Plaintiffs' proposed Amended Complaint presents a plausible claim that the Defendants acted fraudulently. Additionally, given the early stage of this litigation, granting leave to amend will not result in any undue prejudice to Defendants. Therefore, the Court grants the Plaintiffs' leave to amend their Complaint and denies the Defendants' motion to dismiss pursuant to FRCP 12(b)(7) for failing to join an indispensable party.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 8)** pursuant to FRCP 12(b)(6) filed by the Defendant Nationwide and the **Motion to Dismiss (Rec. Doc. 10)** pursuant to FRCP 12(b)(6) and (7) filed by the Defendants Adame and FEFA are **DENIED.**

**IT IS FURTHER ORDERED** that the **Motion for Leave to File First Amended Complaint (Rec. Doc. 22)** filed by the Plaintiffs is **GRANTED**.

New Orleans, Louisiana, this 19th day of February, 2020

_____
JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE